IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:24-CV-272-RJ

APRIL LIVESAY,

           Plaintiff/Claimant,

v.

LELAND DUDEK,
*Acting Commissioner of Social Security*,

           Defendant.

O R D E R

This matter is before the court on the parties' briefs filed pursuant to the Supplemental Rules for Social Security Actions. [DE-17, -19]. Claimant April Brandhorst Livesay ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). Claimant filed a reply to the Commissioner's brief, [DE-20], and the time for filing further responsive briefs has expired. Having carefully reviewed the administrative record and the briefs submitted by the parties, the judgment of the Commissioner is affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on March 30, 2017, alleging disability beginning September 22, 2016. (R. 208, 540–53). The claim was denied initially and upon reconsideration. (R. 190–254). A hearing before an Administrative Law Judge ("ALJ") was held on February 26, 2020, at which Claimant, who was unrepresented, and a vocational expert ("VE") appeared and testified. (R. 147–71). On June 9, 2020, the ALJ issued a decision denying Claimant's request for benefits. (R. 255–80). On December 29, 2020, the Appeals

Council granted Claimant's request for review and remanded the case for a new hearing. (R. 281–84). The remand hearing was held telephonically before an ALJ on July 19, 2021, and Claimant, who was again unrepresented, and a VE appeared and testified. (R. 93–146). The ALJ issued an unfavorable decision on November 3, 2021, and the Appeals Council granted Claimant's request for review on July 26, 2022. (R. 285–321, 322–27). The second remand hearing was initially scheduled for January 24, 2023, but rescheduled to May 23, 2023. (R. 77–92). At the May 23, 2023 hearing, Claimant, with the assistance of counsel, and a VE appeared by telephone and testified. (R. 43–76). The ALJ issued an unfavorable decision on July 5, 2023, and on March 15, 2024, the Appeals Council denied Claimant's request for review. (R. 1–6, 11–42). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the

2

[Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written

3

decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the ALJ erred by (1) failing to resolve internal conflicts in her residual functional capacity ("RFC"), thereby preventing meaningful judicial review, and (2) improperly assessing the opinion of her treating provider, Miranda Mohabir, M.D. Pl.'s Br. [DE-17] at 9–22.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity during the period from her alleged onset date through her September 30, 2021 date last insured. (R. 17). Next, the ALJ determined Claimant had the severe impairments of obesity, degenerative disc disease of the lumbar spine, degenerative joint disease of the left knee, lupus, Sjogren's syndrome, Raynaud's phenomenon, fibromyalgia, headaches, hypertension, depressive/bipolar disorder, and anxiety disorder. *Id.* At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17–20). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments had resulted in mild limitations in understanding, remembering, or applying information; and moderate limitations in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 19–20).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with the following additional limitations:

_____
[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing

4

[S]he can frequently climb ramps and stairs; can occasionally climb stepladders up to four vertical feet in height with no climbing of higher ladders, of ropes, or scaffolds of any height; can frequently balance, kneel, and crouch; can occasionally stoop and crawl; can have occasional exposure to extreme cold, vibration, moving and mechanical parts, and high exposed places; and can have exposure up to and including moderate noise. The claimant is limited to work needing little or no judgment to do simple duties that can be learned on the job or in a short period of time, usually within 30 days, and for which little vocational preparation and judgment are needed; is limited to work requiring sustained concentration and persistence for no greater than approximately two hours at one time; is limited to work that is not frequently performed on an assembly line or at a similar production pace; can have occasional changes to the work setting and the manner and method of performing assigned work; requires work that frequently provides for two 15-minute breaks and one 30-minute break for each eight-hour shift worked, occurring at such times as directed by the employer; and is limited to occasional interactions with supervisors, coworkers, and the public when performing her assigned work.

(R. 21–28). In making this assessment, the ALJ found Claimant's statements about the intensity, persistence, and limiting effects of her symptoms to be not entirely consistent with the medical and other evidence in the record. (R. 22). At step four, the ALJ concluded that Claimant is unable to perform any of her past relevant work. (R. 28–29). However, based on Claimant's age, education, work experience, and RFC, the ALJ identified three jobs existing in significant numbers in the national economy that she could perform: Paper Finishing Machine Operator, Folding Machine Operator, and Paper Tying Machine Operator. (R. 29–30).

## V. DISCUSSION

Claimant contends that the ALJ's RFC findings regarding her ability to sustain concentration and persistence are internally inconsistent, and that the ALJ failed to properly

---

up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

5

evaluate the medical opinion of Dr. Mohabir, her treating provider. Pl.'s Br. [DE-17] at 9–22. The Commissioner counters that substantial evidence supports the ALJ's finding that Claimant has the RFC to perform a reduced range of light work. Def.'s Br. [DE-19] at 6–12.

### A. The RFC is not internally inconsistent.

"[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

Here, Claimant argues that the ALJ's RFC findings are internally inconsistent because the RFC limits her to "work requiring sustained concentration and persistence for no greater than approximately two hours at one time" but also notes that she "requires work that frequently provides for two 15-minute breaks and one 30-minute break for each eight-hour shift worked, occurring at such times as directed by the employer," (R. 21). Pl.'s Br. [DE-17] at 9–14. According to Claimant,

> These two RFC findings are mutually exclusive for multiple reasons. First, work that "frequently provides for two 15-minute breaks and one 30-minute break for each 8-hour shift worked" means that an individual would only receive her three breaks from one-to-two-thirds of the time (i.e., there would be some shifts w[h]ere the worker might only receive one or two breaks). SSR 83-10; AR. 21. Second, the

6

> ALJ's RFC does not specify that the breaks, when all three breaks are received, would occur at roughly two-hour intervals, instead finding the breaks would occur "at such times as directed by the employer," implying the employer could order a worker to work for a three-hour (or longer) interval depending on how the work was moving in any given shift. AR 21. Such a finding is not consistent with a limitation to "work requiring sustained concentration and persistence for no greater than approximately 2 hours at a time." AR 21; POMS DI 25002.010(B)(3)(d).

*Id.* at 13.

The Commissioner responds that the ALJ built a logical bridge when formulating the RFC, and there is no material inconsistency within it. Def.'s Br. [DE-19] at 7–9. In support of this assertion, the Commissioner notes that the RFC does not state that Claimant can *only* pay attention for two hours, but that she can sustain concentration and persistence for no greater than two hours at a time. *Id.* at 8. "Moreover, light work inherently provides for a standard break *every two hours* during the course of a workday, which is exactly consistent with the two 15-minute breaks and one 30-minute break, as the RFC found." *Id.* (emphasis in original). The Commissioner argues that these findings are especially significant because the VE clarified that in the context of unskilled work, an employer can accommodate up to ten percent of off-task work time in addition to two breaks and a lunch break. *Id.* at 8–9.

The court agrees with the Commissioner. While Claimant is correct that SSR 83-10 defines what is "frequent" in the context of the physical aspects of light work as "occurring from one-third to two-thirds of the time," and the ALJ stated at the hearing that "the terms I have used in my hypotheticals should be given the same definitions as used by the DOT or the SCO," there is simply no reason to believe that the ALJ's decision to limit Claimant to "work requiring sustained concentration and persistence for no greater than approximately two hours at a time" conflicts with his decision to also limit Claimant to "work that frequently provides for two 15-minute breaks and one 30-minute break." (R. 21, 70–71).

7

To begin with, the ALJ's two-hour concentration and persistence limitation is an approximate one; there is no specific language used to indicate that Claimant's working periods can never exceed two hours or that all scheduled breaks must be taken exactly at or by the two-hour mark. (R. 21). This is significant because a Social Security Ruling, which informs and binds the actions of all SSA components, *see* 20 C.F.R. § 402.160(b)(1) (2025), notes that an eight-hour workday includes "a morning break, a lunch period, and an afternoon break at *approximately 2-hour intervals*." *See* SSR 96-9p, 1996 WL 374185, at *6 (emphasis added). In other words, for the purpose of assessing a claimant's RFC, it is inherently assumed that light work includes a break roughly every two hours—and, despite Claimant's assertions to the contrary, that assumption is not displaced by the ALJ's decision to include the word "frequently" in Claimant's RFC, or his decision to describe Claimant's breaks as occurring "at such times as directed by the employer." *See id.*; *see also Williams v. Comm'r of Soc. Sec.*, 805 F. App'x 692, 694–95 (9th Cir. 2020) (noting the need for fifteen-minute breaks after every two hours of work is not an additional limitation or restriction on the ability to work; under SSR 96-9p, such breaks "are contemplated by the SSA as part of a normal workday schedule").

The conclusion that the assessed RFC is not internally inconsistent is supported by the VE's hearing testimony. When presented with a hypothetical containing the exact allegedly conflicting language described above, the VE did not express any confusion about the ALJ's use of terms, and in fact confirmed that she understood the hypothetical as described. (R. 70–71). The VE testified that, based on her over thirty years of experience, the individual described in the hypothetical could work three different light-work-level jobs that exist in significant numbers in the national economy. (R. 71). Notably, the VE also clarified that, in the context of unskilled work, employers can accommodate approximately ten percent of off-task time in addition to two breaks and the thirty

8

to forty-five-minute lunch that is afforded to them—i.e., the breaks that occur approximately every two hours per SSR 96-9p. (R. 73). Thus, based on the VE's testimony and the express language of the SSR 96-9p, the RFC's concentration-and-persistence-related limitations do not conflict with the break-related limitations assessed, and remand is not warranted on this basis.

### B. The ALJ properly evaluated Dr. Mohabir's attending physician statements.

On September 15, 2015, Dr. Miranda Mohabir, Claimant's behavioral health treating physician, completed an attending physician statement indicating that Claimant is "severely depressed[,] along w[ith] other medical issues." (R. 2033–34). The statement, a form sheet consisting of several short answer questions and check-the-box questions, also notes Dr. Mohabir's exam findings; Claimant's ability to write a sentence from Dr. Mohabir's dictation, follow a three-step command, and apply focus and concentration in session for periods of five to ten minutes; Claimant's reports that she experiences panic attacks at random throughout the week, which tend to last five to ten minutes in length and involve symptoms of diaphoresis, shortness of breath, and heart palpitations; Claimant's reports that she is "not sleeping" and has experienced "social withdrawal"; Claimant's statement that she "feels sick," and this has been a barrier to her returning to work; and Dr. Mohabir's assessment that Claimant is "unable to work at this time." *Id.*

Dr. Mohabir completed a second attending physician statement on November 2, 2015, using the same form sheet as before. (R. 2036–37). This time, Dr. Mohabir indicated that Claimant "has depression/anxiety sympts [sic] that render her non-functional"; applied focus and concentration in session for five to ten minutes; was experiencing panic attacks lasting approximately ten minutes two to three times per week, which tended to include the symptoms of increased heart rate, sweating, and nausea; reported disturbed sleep, with frequent awakenings, and mostly staying home; and presented with a "[r]estricted affect [and] [p]sychomotor retardation."

9

*Id.* Once again, Dr. Mohabir checked the box indicating that Claimant is "unable to work at this time." (R. 2037).

On December 22, 2015, Dr. Mohabir completed another attending physician statement using the same form sheet as the previous two times. (R. 2031–32). Dr. Mohabir's notes reflect that Claimant's "depression/anxiety has rendered her non-functional"; she was able to apply focus and concentration in session for five to ten minutes; she presented as "[a]nxious/sad," with "[p]sychomotor retardation," and her "[a]ffect [was] constricted"; she was experiencing panic attacks about two to three times per day, and they tended to last for five minutes at a time and involved symptoms of shaking, nausea, sweating, and heart palpitations; and she reported feeling as though her depression and anxiety were a barrier to her returning to work. *Id.* As before, Dr. Mohabir checked the box indicating that Claimant is unable to work at this time, even with accommodations. (R. 2032).

Finally, on January 27, 2016, Dr. Mohabir completed a Disability Management Solutions Medical Request Form from Cigna. (R. 2038). In it, she noted that Claimant's depression and anxiety have rendered her unable to work, and that as Claimant's physician, she has restricted Claimant to "[n]o work" but has not restricted her activities of daily living. *Id.* Dr. Mohabir also checked a box reflecting that Claimant could not return to work at this time even if accommodations were made for her various mental health diagnoses. *Id.*

In evaluating Dr. Mohabir's various reports, the ALJ stated the following:

> The record contains a report from Miranda Mohabir, M.D. stating that the claimant is unable to work at this time. (Ex. B35F, Pages 10-11). However, the determination of disability is reserved for the Commissioner of the Social Security Administration. Therefore, the undersigned is not required to evaluate or assign persuasiveness to this report. Further, this report was issued approximately nine months before the claimant's alleged onset date, lessening any persuasiveness it may otherwise have held.

10

> There is a subsequent report from Dr. Mohabir that also states the claimant is unable to work. (Ex. B35F, Pages 12-13). However, the determination of disability is reserved for the Commissioner of the Social Security Administration. Therefore, the undersigned is not required to evaluate or assign persuasiveness to this report. Further, this report was issued approximately one year before the claimant's alleged onset date, lessening any persuasiveness it may otherwise have held.
>
> There is a third report from Dr. Mohabir again stating that the claimant is unable to work. (Ex. B35F, Pages 15-16). However, the determination of disability is reserved for the Commissioner of the Social Security Administration. Therefore, the undersigned is not required to evaluate or assign persuasiveness to this report. Further, this report was issued approximately ten months before the claimant's alleged onset date, lessening any persuasiveness it may otherwise have held.

(R. 28). Claimant argues that this analysis is improper because the ALJ failed to assign persuasiveness to Dr. Mohabir's opinions. Pl.'s Br. [DE-17] at 19–22. The Commissioner counters that the ALJ's assessment was proper for two reasons: one, Dr. Mohabir's reports are not opinions under the relevant medical evidence regulations, and two, even assuming *arguendo* that they are medical opinions, they predate the alleged onset date by eight months at a minimum, and Claimant has pointed to no evidence tying this pre-alleged-onset-date evidence to the relevant period that began on September 22, 2016. Def.'s Br. [DE-19] at 9–12.

Once more, the court agrees with the Commissioner. When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. § 404.1545(a)(3). The applicable Regulations define a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions[.]" 20 C.F.R. § 404.1513(a)(2). A medical opinion addresses a claimant's limitations in the physical, mental, or other demand of work activities, or a claimant's ability to adapt to environmental conditions. *Id.* However, here, Dr. Mohabir's attending physician statements simply describe Claimant's emotional state, Dr. Mohabir's behavioral observations of

11

Claimant, and Claimant's performance on various cognitive assessments performed in-session, as well as Claimant's prescribed medications and her subjective reports about her symptoms. (R. 2031–38). At no point did Dr. Mohabir meaningfully assess how any of Claimant's limitations will impact her ability to complete work activities. Instead, she merely concluded that Claimant's impairments have rendered her non-functional and that she is unable to work, statements that are neither inherently valuable nor persuasive and, as such, require no discussion by the ALJ. 20 C.F.R. § 404.1520b(c).

Claimant contends that Dr. Mohabir's statements that Claimant was non-functional, only focused for five to ten minutes at a time during sessions, and had panic attacks lasting five to ten minutes each either randomly, two or three times per week, or two or three times per day all represent medical opinion evidence that the ALJ should have evaluated. Pl.'s Br. [DE-17] at 20. However, this argument is unavailing, as Dr. Mohabir's somewhat vague, session-specific observations coupled with Claimant's subjective reports about her panic attacks do not provide opinions from which the ALJ could determine any specific limitations Claimant might face in a work setting or restrictions in physical, mental, or other demands that might be appropriate when assessing her RFC. Rather, they are more like "other medical evidence" under 20 C.F.R. § 404.1513(a)(3) or evidence that is not inherently valuable or persuasive under 20 C.F.R. § 404.1520b(c). *See Hardin v. Dudek*, No. 7:24-CV-377-KS, 2025 WL 602951, at *3 n.2 (E.D.N.C. Feb. 25, 2025) ("The statement summarizes a May 2019 evaluation but is not a medical opinion as defined by 20 C.F.R. § 404.1513 as it does not state what Plaintiff can do despite her impairments, nor does it explicitly comment on her abilities or limitations in performing the mental demands of work.") (citing *Desmarais v. O'Malley*, No. 7:23-CV-7-M, 2024 WL 1328200, at *9 (E.D.N.C. Feb. 6, 2024) (finding physician statement "not a medical opinion subject to the ALJ's

12

evaluation" because it does not mention how symptoms will impact or limit ability to work), *adopted by*, 2024 WL 1310673 (E.D.N.C. Mar. 27, 2024)); *Lewis v. Comm'r of Soc. Sec.*, No. 3:22-cv-00002-GCM, 2023 WL 2593015, at *3 (W.D.N.C. Mar. 21, 2023) (physicians' observations that claimant had "slowing of thought, poor organization and thoughtfulness, akathetic symptoms, and difficulty staying seated" and "deficits in ability to function consequent to disregulation [sic] of sleep, disturbances in mood" more like other medical evidence under 20 C.F.R. § 404.1513(a)(3) than medical opinions, even coupled with checked boxes indicating Claimant was unable to work) (citing *Stephanie B. v. Kijakazi*, No. 5:20-cv-00060, 2022 WL 909038, at *9–10 (W.D. Va. Mar. 28, 2022) (concluding that statements about the plaintiff's "psychiatric diagnoses, her 'partial response' to prescribed treatment, and her 'somewhat guarded' prognosis were [o]ther medical evidence," not medical opinions); *Richard P. v. Saul*, No. 5:20-cv-00022, 2021 WL 2152566, at *7 (W.D. Va. May 27, 2021) (explaining a medical opinion within the regulations would provide something such as plaintiff "would be unable to work for a period of an hour and a half every 4 hours in an 8 hour workday for his nebulizer treatments.")). Accordingly, the ALJ did not err in discounting Dr. Mohabir's attending physician statements, and remand is not appropriate on this basis, either.

## VI. CONCLUSION

For the reasons stated above, the judgment of the Commissioner is affirmed.

SO ORDERED, this the __13__ day of March 2025.

Robert B. Jones, Jr.
United States Magistrate Judge

13

Case 5:24-cv-00272-RJ    Document 21    Filed 03/13/25    Page 13 of 13